UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

                       Plaintiff,

      -against-

INJAWE INC. and DINA E. JOHN,

                       Defendants.
-----------------------------------------------------------X

**MEMORANDUM AND ORDER**
24-CV-3051 (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

Plaintiff Federal National Mortgage Association ("FNMA") initiated this action on April 24, 2024, against Defendants Injawe Inc., Dina E. John, and John Does #1–6.[1] Compl., ECF 1. Plaintiff seeks to foreclose on a mortgage lien encumbering a multi-unit property located at 809 Rogers Avenue, Brooklyn, New York 11226 (the "Property"),[2] pursuant to the governing loan documents.[3] *Id.* ¶ 1; Chapman Decl., ECF 28, ¶ 3. Specifically, Plaintiff seeks the foreclosure and sale of the property to satisfy Plaintiff's damages, consisting of $887,945.11 in principal plus accrued interest, and other

---

[1] Defendants "John Does #1–6" are unknown persons or entities joined as party defendants because they may have some interest in and to the property Plaintiff seeks to foreclose, or may be persons who hold or have collected the rents, issues and profits relating to or arising from the property. Compl., ECF 1, ¶ 6. However, Plaintiff represents that it has ascertained that no parties other than the named Defendants have a subordinate interest in or lien upon the property that would be extinguished in this action, and therefore requests that the Court delete those Defendants from the caption. Mem. in Supp. of Mot. for Summ. J. ("Mem."), ECF 25, at 2, 28. The request is granted.

[2] The Assignment of Mortgages attached as Exhibit E to Plaintiff's complaint contains a more detailed description of the Property. Assignment of Mortgs., ECF 1-7, at ECF p. 6.

[3] *See* Article 14 of the Loan Agreement, ECF 1-5, at ECF pp. 79–86 (describing the parties' obligations and remedies in the event of a default).

monetary relief for which the loan documents provide. Compl., ECF 1, ¶¶ 59, 64; Pl. Rule 56.1 Statement ("56.1"), ECF 26, ¶¶ 43–64; Davenport Decl., ECF 27, ¶¶ 46–64.

Currently pending before this Court is Plaintiff's unopposed motion for summary judgment. *See* Consent to Jurisdiction, ECF 18; Mot. for Summ. J. ("Mot."), ECF 24; Mem., ECF 25; 56.1, ECF 26; Davenport Decl., ECF 27; Chapman Decl., ECF 28; Joint Status Report, ECF 32 (asking the Court to reinstate the motion for summary judgment in light of the conclusion of the bankruptcy case); Mar. 26, 2025 ECF Order (reinstating motion). For the reasons set forth below, this Court grants Plaintiff's motion for summary judgment.[4]

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

I. Factual Background

   A. The Loan Documents

This case arises out of a loan, secured by a note and mortgage, that Defendant Injawe Inc. ("Injawe" or the "Borrower") took out on a property located at 809 Rogers Avenue, Brooklyn, New York 11226.[5] 56.1, ECF 26, ¶¶ 3, 6–11. On December 22, 2016, Injawe executed an Amended and Restated Multifamily Note ("Note") to repay Greystone Servicing Corporation, Inc. ("Greystone" or the "Lender") $1,000,000.00 plus interest. Compl., ECF 1, ¶ 15; Note, ECF 1-3. On the same day, to secure its

---

[4] Plaintiff's motion seeks to temporarily sever and hold in abeyance any claims against the individual Defendants, because "in the event that Plaintiff is paid in full from the proceeds of the sale of the Property, there will be no basis to collect on this personal liability." Mem., ECF 25, at 19–20. Absent any objection, or practical reason to deny such a request, the Court severs any claims against Defendant John individually. *See Wells Fargo Bank, N.A. v. 5615 N. LLC*, No. 20-CV-2048 (VSB), 2022 WL 15523689, at *7 (S.D.N.Y. Oct. 27, 2022); *Wilmington Tr., N.A. v. Winta Asset Mgmt. LLC*, No. 20-CV-5309 (JGK), 2022 WL 2657166, at *8 (S.D.N.Y. July 8, 2022).

[5] The property Plaintiff seeks to foreclose is a mixed-use residential/office property that Plaintiff describes as commercial. Consolidation, Extension and Modification Agreement ("CEMA"), ECF 1-4, at ECF p. 2; 56.1, ECF 26, ¶ 3.

2

indebtedness under the Note, Defendant Injawe executed a Consolidation, Extension and Modification Agreement ("CEMA"), which consolidated various existing notes and mortgages into a single mortgage (the "Mortgage").[6] *See* Compl., ECF 1, ¶ 16; CEMA, ECF 1-4, at ECF pp. 3–8.

Also on December 22, 2016, Defendant Injawe executed a Multifamily Mortgage, Assignment of Leases and Rents ("ALR"), Security Agreement, and Fixture Filing (the "Mortgage Agreement"), under which Defendant Injawe promised to assign and transfer to the Lender all rents it collected from tenants at the Property and the Lender granted Defendant Injawe a revocable license to collect and receive all such rents. *See* Compl., ECF 1, ¶¶ 17–18, 28, 50; Davenport Decl., ECF 27, ¶ 21; CEMA, Ex. C ("Mortg. Agreement"), ECF 1-4, at ECF pp. 14–34. Under the ALR, Defendant Injawe was to pay the costs of managing and maintaining the Property and would be authorized to retain any remaining rents after Defendant Injawe paid the installments of interest and principal due under the Note and loan documents. *See* Compl., ECF 1, ¶ 17.

On December 22, 2016, Defendant Injawe also entered into a Multifamily Loan and Security Agreement (the "Loan Agreement") with Greystone and Defendant John (the "Guarantor") executed a Guaranty of Non-Recourse Obligations (the "Guaranty") to and for the benefit of Greystone. *See* Compl., ECF 1, ¶¶ 19, 20; *see generally* Loan Agreement, ECF 1-5; Guaranty, ECF 1-6. That same day, Greystone assigned to Plaintiff the loan documents, as well as certain Collateral Agreements and Other Loan Documents (the "Collateral Agreements Assignment") related to the Property, thereby assigning such agreements, including the Loan Agreement, the Guaranty, and any other

---

[6] *See* Assignment of Mortgs., ECF 1-7, at ECF pp. 4–5 (detailing the various mortgages).

documents "executed in connection with the Mortgage Loan," to FNMA. Compl., ECF 1, ¶¶ 22–25 (quotation marks omitted); *see* Davenport Decl., ECF 27, ¶¶ 14–18; Assignment of Mortgs., ECF 1-7; Assignment of Collateral Agreements, ECF 1-8.

On January 12, 2017, both the CEMA and Mortgage were recorded in the Office of the Register of the City of New York with City Register File Number ("CRFN") 2017000017904; the recording describes the Property as a "4–6 family with store/office." Recording and Endorsement Cover Page to CEMA, ECF 1-4, at ECF p. 2 (capitalization modified); *see* Compl., ECF 1, ¶ 16; Davenport Decl., ECF 27, ¶ 10. Plaintiff is in "possession of the original Note, as well as the Mortgage and Note Assignment," and therefore "Plaintiff became and is still the mortgagee on, and owner and holder of, the Note and Mortgage Agreement." Compl., ECF 1, ¶ 24; *see* Davenport Decl., ECF 27, ¶ 17; 56.1, ECF 26, ¶¶ 12–16. The Note, the Loan Agreement, the Mortgage Agreement, the Guaranty, and all attachments thereto and assignments thereof are in Plaintiff's possession and constitute the "Loan Documents." Compl., ECF 1, ¶ 21; Davenport Decl., ECF 27, ¶¶ 13, 15–17.

### B. Loan Document Terms and Event of Default

Under Schedule 2 of the Loan Agreement, Injawe agreed to repay its Mortgage loan in monthly installments of principal and interest, at 5.07% per annum provided there was no default, beginning on February 1, 2017, and continuing thereafter until the loan was fully paid on January 1, 2032. *See* Compl., ECF 1, ¶ 19; Loan Agreement, ECF 1-5, at ECF pp. 11–17, 112–17; Davenport Decl., ECF 27, ¶ 20.

Under Section 3.02(a) of the Loan Agreement, Injawe agreed to be held personally liable to the Lender "for the repayment of a portion of the Indebtedness equal to any loss or damage suffered by Lender as a result of certain enumerated items listed therein." Compl., ECF 1, ¶ 27 (quotation marks omitted); Davenport Decl., ECF

4

27, ¶ 35; Loan Agreement, ECF 1-5, at ECF pp. 18–19. Under Section 3.03, Injawe agreed to be personally and fully liable to the Lender for its "indemnity obligations under Section 13.01(e) of [the] Loan Agreement . . . and any other express indemnity obligations provided by Borrower under any Loan Document." Compl., ECF 1, ¶ 30 (quotation marks omitted); *see* Loan Agreement, ECF 1-5, at ECF pp. 19–20.

Under Section 14.01(a) of the Loan Agreement, any failure by Injawe to pay or deposit any amount required by the Loan Documents, including the monthly payments, is deemed an automatic "Event of Default." Loan Agreement, ECF 1-5, § 14.01, at ECF p. 80; 56.1, ECF 26, ¶ 20. Additionally, Plaintiff asserts, and Defendants do not rebut, that failure to provide financial reporting as required under Section 8.02(b) of the Loan Agreement, or failure to cure within 30 days, constitutes an Event of Default. Compl., ECF 1, ¶¶ 42, 44; Davenport Decl., ECF 27, ¶¶ 23–25; *see* Loan Agreement, ECF 1-5, § 8.02, at ECF pp. 44–48; Loan Agreement, ECF 1-5, § 14.01(c), at ECF p. 81; 56.1, ECF 26, ¶¶ 21–22. Under Section 5 of the Mortgage Agreement, following a default, "the Lender may declare the entire amount of the indebtedness immediately due and payable." Davenport Decl., ECF 27, ¶ 26; *see* 56.1, ECF 26, ¶ 23.

Under Section 2.02(d)(1)(A) of the Loan Agreement, the parties agreed that the "Default Rate" of interest shall be applied to any principal, interest, or other indebtedness due under the Loan Documents that remains past due for 30 days or more.[7] Davenport Decl., ECF 27, ¶ 28; 56.1, ECF 26, ¶ 25. Additionally, the Loan Documents provide that the Lender is entitled to a late charge, enforcement costs, and

---

[7] The "Default Rate" is "equal to the lesser of (i) the Contract Interest Rate plus four (4) percentage points; or (ii) the maximum interest rate which may be collected from [Defendant Injawe] under applicable law." 56.1, ECF 26, ¶ 25.

5

any additional funds expended by the Lender in maintaining the Property. *See* Compl., ECF 1, ¶¶ 35–37 (citing Loan Agreement, ECF 1-5, § 2.02(c), at ECF pp. 12–13; CEMA, ECF 1-4, at ECF pp. 15, 23–24); Davenport Decl., ECF 27, ¶¶ 29–34.

## II. Procedural History

As noted above, Plaintiff commenced this action on April 24, 2024. Compl., ECF 1.[8] Defendants filed an answer and counterclaims on May 21, 2024. Answer, ECF 8.

At the parties' request, on July 3, 2024, the Court declined to set a discovery schedule and on July 11, 2024, directed the parties to initiate dispositive motion practice. Letter, ECF 11; July 3, 2024 ECF Order; July 11, 2024 Min. Entry & Order. Also on July 11, 2024, Plaintiff filed a motion to appoint a receiver; Defendants did not object and the Court granted the motion on August 5, 2024. *See* Notice of Mot., ECF 12; Mem. in Supp., ECF 13; Aug. 5, 2024 ECF Order; Order Appointing Receiver, ECF 20.

On September 16, 2024, after Defendants failed to meet several response deadlines, Plaintiff filed an unopposed motion for summary judgment. Letter, ECF 23; Sept. 13, 2024 ECF Order (granting Plaintiff permission to file motion without Defendants' response in light of Defendants' failure to comply with court deadlines); Mot., ECF 24; Mem., ECF 25. That same day, Defendants filed a notice of bankruptcy with this Court. *See* Notice of Filing Bankr., ECF 29. In light of the bankruptcy proceeding, Plaintiff's claims against Defendant Injawe were automatically stayed, but

---

[8] Plaintiff is a corporation with its principal place of business in Washington, D.C. Compl., ECF 1, ¶ 2. Defendants Injawe Inc. and Dina E. John are based in New York. *Id.* ¶¶ 4–5. The citizenship of potential nominal defendants John Does #1–6 is not addressed in the pleadings, *id.* ¶ 6; Plaintiff has moved that they be dropped from the case, *see supra* note 1. The amount in controversy is well over $75,000. *See, e.g.*, 56.1, ECF 26, ¶ 43 (stating that "[a]s of July 31, 2024, there is $1,067,390.68 due and owing to Plaintiff under the Loan Documents"). Accordingly, the Court has subject matter jurisdiction over this case. *See* 28 U.S.C. § 1332.

6

after briefing, the Court declined to extend the stay to Defendant John. Sept. 18, 2024 ECF Order; Letter, ECF 30; Response, ECF 31; Nov. 21, 2024 ECF Order. The Court also administratively terminated Plaintiff's motion for summary judgment, without prejudice, and ordered the parties to submit a joint status report providing an update as to the bankruptcy proceeding on March 21, 2025. Nov. 21, 2024 ECF Order.

On March 20, 2025, the parties submitted a joint status report indicating that the bankruptcy proceeding was complete and asking the Court to reinstate the motion for summary judgment.[9] Status Report, ECF 32. The Court granted Defendants additional time to respond to the motion for summary judgment, setting a deadline of April 8, 2025. Mar. 26, 2025 ECF Order. Defendants failed to file any opposition to Plaintiff's motion by the renewed deadline. To date, no Defendant has filed a response to the motion for summary judgment.

On October 21, 2025, the Court issued an order to show cause, directing Plaintiff to demonstrate its compliance with New York's Real Property Actions and Proceedings Law ("RPAPL") §§ 1303 and 1320. Oct. 21, 2025 Order to Show Cause. On October 28, 2025, Plaintiff responded, representing that RPAPL § 1320's notice requirements are not applicable to the instant action, and acknowledging that Plaintiff had not completed the requirements of RPAPL § 1303. Resp. to Order to Show Cause, ECF 46, at 1, 2; *see* Chapman Decl., ECF 47, ¶ 10. Plaintiff also requested that it be allowed to cure this deficiency. *See* Resp. to Order to Show Cause, ECF 46, at 2, 3–4 (citing *Green Mountain*

---

[9] Plaintiff also highlighted to the Court that, as a result of Defendant Injawe's bankruptcy filing, "full recourse liability has been triggered under the Loan Documents and Plaintiff reserves all its rights and remedies to recover the balance of the mortgage debt from the Defendants personally." Joint Status Report, ECF 32, at 2; Loan Agreement, ECF 1-5, § 3.02(b)(3); Davenport Decl., ECF 27, ¶ 37.

7

*Holdings (Cayman) Ltd. v. 501 Lafayette Ave LLC*, No. 21-CV-5844 (MKB) (TAM), 2023 WL 6594003, at *6–8 (E.D.N.Y. Aug. 18, 2023), *report and recommendation adopted sub nom. Green Mountain Holdings (Cayman) LTD v. 501 Lafayette Ave LLC*, 2023 WL 5993166 (E.D.N.Y. Sept. 15, 2023); *United States v. Lancor*, No. 19-CV-0936 (BKS) (TWD), 2022 WL 4551694 (N.D.N.Y. Sept. 29, 2022)). The Court granted Plaintiff leave to cure the § 1303 deficiency and directed a briefing schedule for any supplemental filings in support of the motion for summary judgment, as well as Defendants' opposition thereto. Nov. 12, 2025 ECF Order. Plaintiff submitted a supplemental declaration, but Defendants did not respond. *See* Chapman Suppl. Decl., ECF 53; *see generally* Docket.

## DISCUSSION

### I. Legal Standards

#### A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Darnell v. Pineiro*, 849 F.3d 17, 22 (2d Cir. 2017). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Further, a factual dispute is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). The Court "must view all facts in this case in the light most favorable to the non-movant, resolving all ambiguities in [the non-movant's] favor." *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021). "Put another way, summary judgment is appropriate only where

8

the record taken as a whole could not lead a rational trier of fact to find for the non-movant." *Id.* (alterations and quotation marks omitted).

The movant "bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'" *Nick's Garage, Inc.*, 875 F.3d at 114 (alteration in original) (quoting *Celotex Corp.*, 477 U.S. at 323). Once the moving party has satisfied their burden, "'the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Brizzi v. Utica Mut. Ins. Co.*, 529 F. Supp. 3d 44, 51 (E.D.N.Y. 2021) (emphasis in original) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant].").

Summary judgment must be denied "if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). Further, Rule 56(c) provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1); *see Lener v. Hempstead Pub. Sch.*, 55 F. Supp. 3d 267, 274 (E.D.N.Y. 2014).

When determining whether a movant is entitled to summary judgment, courts do not weigh the evidence or make credibility determinations to decide the truth of the matter, but instead determine "'whether there is a genuine issue for trial.'" *Green v. Town of E. Haven*, 952 F.3d 394, 406 (2d Cir. 2020) (quoting *Anderson*, 477 U.S. at 249).

9

District courts are "required to 'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). In addition, courts "may not properly consider the record in piecemeal fashion, trusting innocent explanations for individual strands of evidence; rather, it must review all of the evidence in the record." *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 386 (2d Cir. 2020) (quotation marks omitted).

### B. New York Mortgage Foreclosure

"In a foreclosure action under New York law, a plaintiff can establish its *prima facie* entitlement to summary judgment by producing evidence of the mortgage, the unpaid note, and the defendant's default." *Wells Fargo Bank Nat'l Ass'n v. 366 Realty LLC*, No. 17-CV-3570 (SJ) (RER), 2021 WL 9494173, at *3 (E.D.N.Y. Mar. 16, 2021). "Once a mortgagee's *prima facie* case is established, the mortgagor must make an affirmative showing that a defense to the action exists." *Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 80 (E.D.N.Y. 2019) (quotation marks omitted), *vacated on reconsideration on other grounds*, No. 16-CV-4015 (PKC) (VMS), 2025 WL 2802085 (E.D.N.Y. Sept. 30, 2025).

In addition to the common law elements of its *prima facie* case discussed above, the party moving for summary judgment in a mortgage foreclosure action must demonstrate statutory compliance with the RPAPL. *See CIT Bank, N.A. v. Anderson*, No. 16-CV-1712 (ERK) (PK), 2019 WL 3842922, at *1 (E.D.N.Y. Aug. 14, 2019); *Blue Castle (Cayman) Ltd. v. Tawil*, No. 24-CV-1082 (MKB) (TAM), 2025 WL 2482306, at *4 (E.D.N.Y. Aug. 28, 2025). Under RPAPL § 1303, a foreclosing party in an action involving residential real property must provide notice to "(a) any mortgagor if the action relates to an owner-occupied one-to-four family dwelling; and (b) any tenant of a dwelling

10

unit," with specific formatting and content requirements for such notices. RPAPL § 1303(1)–(4); *see id.* § 1305(3) ("[A] successor in interest of residential real property shall provide written notice to all tenants in the same manner as required by [§ 1303(4)] . . . ."); *see also* N.Y. Real Prop. § 265-a (Home Equity Theft Prevention Act ("HETPA")); *First Nat'l Bank of Chi. v. Silver*, 899 N.Y.S.2d 256, 258 (App. Div. 2d Dep't 2010) (explaining that "HETPA . . . requires the foreclosing party in a residential mortgage foreclosure action to deliver statutory-specific notice to the homeowner, together with the summons and complaint" pursuant to RPAPL § 1303(1)).[10]

The required § 1303 notice for tenants of a multi-unit building must contain specific language, starting with "Notice to Tenants of Buildings in Foreclosure[.] New York State Law requires that we provide you this notice about the foreclosure process. Please read it carefully," and including a paragraph, in all capitalized and underlined letters, regarding tenant rights and protections. RPAPL § 1303(5); *id.* § 1303(4). Additionally, the notice must be in bold, 14-point type, printed on colored paper (other than the color of the summons and complaint), and the title of the notice must be in bold, 20-point type. *Id.* § 1303(4). Section 1303 notices must "be delivered with the summons and complaint," and for buildings with five or more dwelling units, posted on the outside of each entrance and exit of the building. *Id.* § 1303(2), (4).

---

[10] Additional notice requirements attend to foreclosures involving "home loan[s]," which the statute defines as loans taken out by a natural person primarily for "personal, family, or household purposes," secured by a mortgage on real estate that has been "improved by a one to four family dwelling," which is used (or intended to be used) as the borrower's "principal dwelling." RPAPL § 1304(6)(a)(1); *see also* RPAPL § 1320 (additional notice requirements for foreclosures involving residential properties with three or fewer units). As noted above, the Property here is a "4-6 family with store/office." Recording and Endorsement Cover Page to CEMA, ECF 1-4, at ECF p. 2 (capitalization modified).

11

## II. Analysis

### A. Note, Mortgage, and Proof of Default

Here, Plaintiff has provided sufficient evidence that the Note, Mortgage, and consolidated Loan Documents were assigned to Plaintiff, and that all of these assignments occurred before Plaintiff filed the instant action. *See* 56.1, ECF 26, ¶¶ 12–16; Davenport Decl., ECF 27, ¶¶ 14–18; Assignment of Mortgs., ECF 1-7. In its Rule 56.1 statement, Plaintiff represented that it holds physical possession and is the owner of the Consolidated Note, CEMA, and ALR, and that none of these documents have been transferred or assigned to another entity. 56.1, ECF 26, ¶¶ 12–16; Davenport Decl., ECF 27, ¶¶ 14–18. Defendants have not contested any of Plaintiff's assertions, nor have they provided any evidence to contradict them. The Court finds that Plaintiff has sufficiently established that Plaintiff is the owner, holder, and physical possessor of the relevant note, mortgage, CEMA, and ALR, and that the same was true upon the filing of this action.[11]

Having produced the note and the mortgage, Plaintiff must next show that Defendants have defaulted in paying the loan to establish a *prima facie* case. *Windward Bora LLC v. Baez*, No. 19-CV-5698 (PKC) (SMG), 2020 WL 4261130, at *3 (E.D.N.Y. July 24, 2020). Plaintiff has submitted uncontroverted evidence that Injawe failed to "make monthly payments of principal, interest and other charges when due and payable under

---

[11] The Court also notes that Plaintiff has established standing to seek foreclosure in this case. Defendants alleged lack of standing as an affirmative defense, *see* Answer, ECF 8, ¶¶ 5–8, but Defendants have not advanced any evidence that puts a material fact in dispute as to Plaintiff's standing to foreclose. "'[A] plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note.'" *E. Sav. Bank, FSB v. Thompson*, 631 F. App'x 13, 15 (2d Cir. 2015) (quoting *Wells Fargo Bank, N.A. v. Rooney*, 19 N.Y.S.3d 543, 544 (App. Div. 2d Dep't 2015)).

the terms of the Loan Documents beginning with the payment due for the month of January 2024 through the present." 56.1, ECF 26, ¶ 37 (citing Davenport Decl., ECF 27, ¶ 40); Payoff Statement, ECF 27-1. The Court also notes that under Section 14.01(a) of the Loan Agreement, any failure by the Defendants to remit the monthly payments is deemed an automatic default. Loan Agreement, ECF 1-5, at ECF p. 80. Under Section 14.01(c), Injawe also had 30 days following written notice to cure its financial reporting default; Plaintiff sent a written notice to Injawe on April 2, 2024, but Injawe failed to cure the deficiency. Loan Agreement, ECF 1-5, at ECF p. 81; 56.1, ECF 26, ¶¶ 40–42; Davenport Decl., ECF 27, ¶¶ 25, 43–45. The Loan Agreement also states that, upon default, the entire unpaid principal balance and all other indebtedness becomes due and payable "without any prior written notice to Borrower, unless applicable law requires otherwise." Loan Agreement, ECF 1-5, at ECF p. 82.[12] Defendants have not

---

[12] The Court observes that, while notice of default is not a required element of Plaintiff's *prima facie* case, as discussed *supra*, Plaintiff has advanced evidence showing that it provided ample notice, contrary to Defendants' affirmative defenses. *See* Answer, ECF 8, ¶¶ 12–13 (asserting failure to "provide proper notice of default"), ¶¶ 37–39 (asserting failure to provide notice under RPAPL § 1304); *see also Secured Asset Mgmt., LLC v. Cong. Beth Joseph Zwi Dushinsky*, No. 17-CV-5588 (DLI) (CLP), 2019 WL 4861411, at *6 (E.D.N.Y. Sept. 30, 2019) (observing that contracted-for notice to cure can be a condition precedent to initiating a foreclosure action), *aff'd sub nom. Secured Asset Mgmt., LLC v. Dushinsky*, 828 F. App'x 815 (2d Cir. 2020).

Here, the record on summary judgment shows that on April 13, 2023, the Lender sent Injawe a letter providing written notice of Injawe's failure to provide outstanding financial reporting. *See* 56.1, ECF 26, ¶ 39; Davenport Decl., ECF 27, ¶ 42. Under Section 14.01(c) of the Loan Agreement, this notice gave Injawe 30 days to cure the deficiency before it ripened into an event of default; Injawe never did so. 56.1, ECF 26, ¶¶ 40–41. Further, on April 2, 2024, Plaintiff sent Injawe and John a demand letter, notifying Defendants that they were in default and that Plaintiff may "immediately institute foreclosure proceedings." Demand Letter, ECF 1-10; *see* 56.1, ECF 26, ¶ 42; Davenport Decl., ECF 27, ¶ 45. As set forth above, Defendants did not file a response to Plaintiff's motion, nor did they file a Rule 56.1 statement. Accordingly, Defendants

13

advanced any evidence to rebut Plaintiff's proof that (1) Defendants have failed to make the required monthly payments under the loan, or (2) Defendants failed to cure their financial reporting default. Accordingly, Plaintiff has advanced sufficient unrebutted evidence to establish Defendant Injawe's default and, thus, its *prima facie* case.

### B. Compliance with RPAPL § 1303

As discussed above, RPAPL § 1303 requires a mortgagee seeking to foreclose on a residential property to comply with certain notice procedures. It is undisputed that Plaintiff did not post the § 1303 notice, as required by New York law, when it first initiated this action. *See* Resp. to Order to Show Cause, ECF 46, at 1–2. Upon noting the oversight, however, the Court granted Plaintiff an opportunity to cure the deficiency, in an exercise of discretion. *See, e.g.*, *Green Mountain Holdings (Cayman) Ltd.*, 2023 WL 6594003, at *8 (recommending that the plaintiff be allowed to cure its failure to serve § 1303 and § 1320 notices). Defendant did not respond to Plaintiff's briefing regarding its proposed cure process, nor its supplemental briefing in support of its motion for summary judgment. *See generally* Docket.

On November 18, 2025, the Clerk of Court reissued summons for Defendants. *See* ECF 51. On December 1, 2025, Plaintiff filed proof of service of the summons, complaint, and § 1303 notice on Defendants, annexed to which was an affirmation stating that a "copy of the 'Notice to Tenants of Building in Foreclosure'" was posted to each exit and

---

have not advanced any evidence to establish a material fact in dispute. *See* Fed. R. Civ. P. 56(a), (c); E.D.N.Y. Local Civil Rule 56.1; *see also Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 82 (E.D.N.Y. 2019) (observing that, even if Defendants had not waived their deficient notice argument, the court would have rejected it on the merits).

Likewise, Defendants cannot assert a material fact in dispute on the affirmative defense that Plaintiff failed to send the notices required under RPAPL § 1304, because, as discussed *supra* note 10 and text accompanying, the loan being foreclosed upon is not a "home loan" within the meaning of the statute.

14

entrance door of the subject Property. Affirmation of Service & Posting, ECF 52, at ECF p. 3. The affirmation further stated that "[t]he Notice was printed on green colored paper, that is other than the color of the Summons and Complaint, and title of the Notice appeared in bold, 20-point type, and the text in bold-14-point font." *Id.*; *see also* Chapman Suppl. Decl., ECF 53, ¶ 7. Accordingly, the Court finds that Plaintiff has now complied with the statutory notice requirements. *See Green Mountain Holdings (Cayman) LTD*, 2025 WL 2494292, at *3, *10 (finding that the plaintiff had complied with § 1303's notice requirement after curing an earlier failure to establish compliance with § 1303).

### C. Defendants' Counterclaims and Remaining Affirmative Defenses

To counter Plaintiff's allegations, Defendants initially set forth 16 affirmative defenses in their answer as well as three counterclaims. *See generally* Answer, ECF 8. However, since then, Defendants have repeatedly failed to file any response in opposition to Plaintiff's motion for summary judgment and thus ran "the risk that the facts set forth in the moving Rule 56.1 statement will be deemed admitted." *Casseus v. New York Coll. of Health Pros.*, No. 15-CV-1914 (SJF) (AYS), 2016 WL 7029157, at *8 (E.D.N.Y. Nov. 10, 2016), *report and recommendation adopted,* 2016 WL 7017364 (E.D.N.Y. Dec. 1, 2016). Additionally, the Defendants' affirmative defenses, which are essentially boilerplate,[13] do not adhere to the Second Circuit's pleading standards, set forth in *GEOMC Co. v. Calmare Therapeutics Inc.*, which require a defendant raising affirmative

---

[13] For example, despite Plaintiff's demonstrated lack of compliance with § 1303's notice requirements at the outset of this case, discussed above, Defendants did not assert this as an affirmative defense, although they did assert lack of compliance with § 1304 in a conclusory fashion. *Cf.* Answer, ECF 8, ¶¶ 37–39 (asserting failure to send prerequisite notices under RPAPL § 1304). As detailed *supra* notes 10 and 12, and text accompanying, § 1304 does not apply here because the mortgage at issue is not a "home loan" under the statute. *See* CEMA, ECF 1-4, at ECF p. 2; 56.1, ECF 26, ¶ 3 (identifying the Property as commercial).

15

defenses "to support these defenses with some factual allegations to make them plausible." 918 F.3d 92, 99 (2d Cir. 2019); *see also Fossil Grp., Inc. v. Angel Seller LLC*, 627 F. Supp. 3d 180, 187 (E.D.N.Y. 2022) (noting that counterclaims must meet the plausibility standards set forth in *Twombly* and *Iqbal*).

The Court is satisfied that Defendants had ample opportunity to oppose Plaintiff's motion for summary judgment and chose not to do so.[14] Therefore, the Court deems the affirmative defenses and counterclaims in Defendants' answer "to be abandoned and ineffective to defeat summary judgment." *E. Sav. Bank v. Robinson*, No. 13-CV-7308 (ADS) (SIL), 2016 WL 482024, at *5 (E.D.N.Y. Feb. 4, 2016) (collecting cases).

"A plaintiff is entitled to foreclose on a property if it demonstrates the existence of an obligation secured by a mortgage, and a default on that obligation." *OneWest Bank, N.A. v. Denham*, No. 14-CV-5529 (DRH) (AKT), 2015 WL 5562980, at *14 (E.D.N.Y. Aug. 31, 2015) (quotation marks omitted), *report and recommendation adopted*, 2015 WL 5562981 (E.D.N.Y. Sept. 21, 2015). Having found that Plaintiff has met its burden to show the existence of and default on the mortgages here, and that Defendants have failed to advance any evidence to establish a material fact in dispute as to Plaintiff's *prima facie* case, the Court grants summary judgment and concludes that entry of judgment of foreclosure and sale is warranted.

---

[14] *See* July 15, 2024 ECF Order (giving Defendants nearly two months to prepare an opposition to Plaintiff's anticipated motion for summary judgment); *see also* Status Report, ECF 32 (indicating Defendants' intent to file an opposition after the stay due to the pending bankruptcy proceedings was lifted); Mar. 26, 2025 ECF Order (granting Defendants leave to file an opposition by April 8, 2025); Pl. Letter, ECF 33 ("Defendants requested leave to file a letter setting forth why additional briefing should be permitted . . . this Court granted Defendants leave to file a response to the Motion by April 8, 2025. . . . Once again, Defendants have elected not to file any responsive papers."); Oct. 21, 2025 ECF Order to Show Cause (offering Defendants an opportunity to respond to Plaintiff's supplemental briefing on the issue of its compliance with RPAPL § 1303); Nov. 12, 2025 ECF Order (same, regarding Plaintiff's proposed process for curing its § 1303 notice deficiency).

16

**III. Requested Relief**

Plaintiff seeks a judgment ordering the foreclosure and sale of the Property, and identifies the following outstanding debts owed to FNMA: (1) $887,945.11 in outstanding principal on the CEMA; (2) $30,512.75 in unpaid interest incurred between December 1, 2023, and July 31, 2024, based on the rate set in the contract; (3) $21,014.70 in default interest incurred between January 1, 2024, and July 31, 2024; (4) a $35,517.80 prepayment premium; (5) $85,762.92 in attorneys' fees and expenses; (6) $1,500.00 in fees for a broker's opinion; (7) $1,623.30 in late charges incurred between September 2023 and November 2023, and between January 2024 and March 2024; (8) $169.00 in default interest from the January 1, 2023 and the August 1, 2023 mortgage payments; (9) $325.00 in returned check fees;[15] (10) $750.00 in replacement reserve fees incurred in December 2018, December 2020, and January 2024; (11) a $1,470.10 balance from the outstanding tax and insurance advance; (12) a $200.00 UCC termination fee; and (13) a $600.00 release fee, totaling $1,067,390.68. Payoff Statement, ECF 27-1; Mem., ECF 25, at 20–22.[16] Plaintiff asserts that the $17,462.54 in funds that Defendants have paid into a replacement reserve account should be credited against the total indebtedness. *See* Davenport Decl., ECF 27, ¶ 64.

For the reasons discussed above, Plaintiff has demonstrated its entitlement to the various categories of damages it seeks. However, given the length of time between when Plaintiff's motion was filed and the date of this judgment, and in light of the

---

[15] These fees were incurred in or around July 2021, August 2022, January 2023, August 2023, October 2023, November 2023, and January 2024. Payoff Statement, ECF 27-1.

[16] Plaintiff's payoff statement, which was prepared on August 5, 2024, calculated default interest through July 31, 2024. *Id.*

17

intervening bankruptcy, Defendants' total indebtedness has likely changed. *See generally* Payoff Statement, ECF 27-1 (calculating interest through July 31, 2024; identifying late charges and return check fees through early 2024); *see also* Notice of Filing Bankr., ECF 29; Sept. 18, 2024 ECF Order (entering automatic stay pursuant to 11 U.S.C. § 362(a)); Status Report, ECF 32 (reporting that the bankruptcy case had resolved); Mar. 26, 2025 ECF Order (reinstating Plaintiff's motion for summary judgment in light of the bankruptcy resolution).

Given the Court's grant of summary judgment, the Court directs Plaintiff to submit an updated proposed order of foreclosure and sale as to Defendant Injawe.[17] The Court further directs Plaintiff to make an application for a referee to supervise the sale. Following the selection of the referee and sale of the property, Plaintiff shall file a proposed judgment, along with an affidavit from the appointed referee, concerning any amounts due to Plaintiff following the sale.

---

[17] As discussed *supra* note 4, the Court grants Plaintiff's request to temporarily sever and hold in abeyance any claims against Defendant John, the Guarantor, pending the sale of the Property.

18

## CONCLUSION

For the reasons outlined above, the Court grants Plaintiff's summary judgment motion and finds that an order of foreclosure and sale shall issue. By January 5, 2026, Plaintiff is directed to submit an updated proposed order as to Defendant Injawe. By January 26, 2026, Plaintiff shall make an application for the appointment of a referee, submitting three proposed referees, with a short description of their qualifications.

**SO ORDERED.**

Dated: Brooklyn, New York
December 22, 2025

_Taryn A. Merkl_
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE